UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

COMMERCIAL CASUALTY INSURANCE COMPANY, a California Corporation,

Plaintiff,

v.

SWARTS, MANNING & ASSOCIATES, INC., a NEVADA Corporation; SWARTS MANNING & ASSOCIATES; LAPORTA-CLARK-LEAVITT INSURANCE AGENCY, INC., a Nevada Corporation; DIXIE LEAVITT AGENCY, a Nevada Corporation doing business as LEAVITT INSURANCE AGENCY; and Predecessors in Interest or Successors in Interest of Any of them,

Defendants.

AND RELATED MATTERS.

2:06-CV-00635-LRH-PAL

ORDER

Presently before the court is a Motion to Dismiss or, in the alternative, to Stay (# 52[1]) filed by Defendant, Swarts, Manning & Associates ("Swarts"). Third-Party Defendant/Plaintiff L & S Air Conditioning Heating And Fireplaces, LLC ("L&S-NV") responded (# 53). Plaintiff, Commercial Casualty Insurance Company ("CCIC") filed an opposition (# 54) and Swarts replied (# 56).

---

[1] Refers to the court's docket number.

## I. Factual Background

This case centers around a rather complex and lengthy workman's compensation insurance coverage dispute involving L&S-NV (the insured), Dixie Leavitt Insurance Agency ("Leavitt"), Swarts (the brokers, successively), and CCIC (the insurer). (Compl. (# 1) ¶¶ 6-44.) L&S-NV is a heating, ventilation, and fireplace construction contractor and Nevada limited liability company with its principle place of business in Clark County, Nevada. (Compl. (# 1) ¶ 13.) L&S-NV's president is Leo J. Santoro ("Santoro"). Sometime after January, 2002, Santoro and/or L&S-NV began performing work in the state of California. For that purpose, Santoro registered a California sole proprietorship in June of 2003 named "L & S Air Conditioning & Heating" ("L&S-CA"). (Compl. (# 1) ¶ 15; Pl. Mot. to Dismiss Third Party Compl. (#45), Ex. C.)

Leavitt was L&S-NV's insurance broker in 2002 when L&S-NV had a workman's compensation insurance policy with CCIC. (Compl. (# 1) ¶ 13.) From 2002 to 2003, Leavitt made allegedly false or misleading statements to CCIC regarding L&S-NV's business operations and the presence of L&S-NV employees in California. (Compl. (# 1) ¶¶ 17, 19-21.) Leavitt also provided allegedly false or misleading certificates of workman's compensation insurance to, among other third-parties, the California State Contractor's Board ("Board"). *Id.* L&S-NV changed insurance brokers sometime before July of 2003, and selected Swarts. (Compl. (# 1) ¶¶ 24-25.) L&S-NV renewed its policy with CCIC in July, 2003. *Id.* Swarts also allegedly made knowingly false and misleading statements to CCIC regarding L&S-NV's business operations and the presence of L&S-NV employees in California, which CCIC purportedly relied upon in renewing L&S-NV's policy. *Id.*

The coverage dispute in this case arises from an unfortunate workplace injury sustained by an employee of L&S-CA, Mitchell Silva ("Silva"), in January of 2004 on an L&S-NV or L&S-CA construction site in California. (Compl. (# 1) ¶ 36.) Silva submitted a claim to CCIC requesting coverage under L&S-NV's policy. *Id.* CCIC denied the claim asserting that Silva's injuries were

not covered by L&S-NV's policy. *Id.*  Silva filed an action with the California Workers Compensation Board ("WCAB"), which assigned the coverage dispute to arbitration.  (Compl. (# 1) ¶ 37.)  In February, 2006, the arbitrator made specific findings of fact and determined that CCIC did not provide workman's compensation coverage to L&S-CA or to L&S-NV employees residing in California, and that CCIC was not estopped from denying coverage for Silva's injuries.  (Pl. Req. to Take Judicial Notice (# 46) § A-1, Arbitrator's Order and Findings of Fact.)  The arbitrator ordered CCIC "dismissed as a party defendant in this matter." *Id.*

On May 3, 2006, L&S-NV filed suit against Swarts, Leavitt, and CCIC in Nevada District Court (hereinafter, "state suit") asserting that Swarts and Leavitt, pursuant to written agreements, were CCIC's agents and authorized to execute binding insurance coverage agreements on CCIC's behalf.  (Mot. to Dismiss or in the Alternative to Stay (# 52), District Ct. Compl., Ex. A,¶¶ 9-10.)  L&S-NV asserts that Swarts, Leavitt, and CCIC (either actually or through its agents), all knew of and issued certificates of insurance evidencing that L&S-NV had workman's compensation insurance for its California operations.  *Id.*  ¶¶ 79-85.  L&S-NV claims that it was unaware that its California operations were not covered by its policy with CCIC and claims that it incurred damages as a result of its reliance on the representations of CCIC, Swarts, and Leavitt.  *Id.*  L&S-NV alleges that CCIC is liable for damages on grounds of estoppel and that Leavitt and Swarts are liable for damages on grounds of implied indemnity.  *Id.*¶¶ 79-90.  L&S-NV also alleges breach of contract, negligence, and breach of the covenant of good faith and fair dealing against Swarts, Leavitt, and CCIC.  (Mot. to Dismiss or in the Alternative to Stay (# 52), District Ct. Compl., Ex. A,¶¶ 52-78.)  CCIC answered, wherein it asserts fourteen affirmative defenses and makes a demand for damages for, among other things, an award of "all sums incurred in defending the Silva claims for coverage in California, and for attorney's fees incurred and costs and expenses incurred, in defending this complaint" as well as "actual losses sustained in defending the Silva action including interest, which exceed $10,000, and which Commercial Casualty reasonably paid to California and Nevada

law firms to secure coverage decisions before the [Board]. . . ." (Mot. to Dismiss or in the Alternative to Stay (# 52), Answer, Ex. G at 21.)

On May 22, 2006, CCIC filed the present lawsuit in this court against Swarts and Leavitt (and related entities) alleging, in summary, that Leavitt and Swarts knew the nature and extent of L&S-NV's California operations, failed to inform, and fraudulently concealed this information from CCIC. (Compl. (# 1) ¶¶ 12, 14-16, 26.) CCIC alleges that Swarts and Leavitt issued false and misleading certificate's of insurance to third parties. *Id.* ¶ 16. CCIC alleges that Swarts and Leavitt misrepresented the risks of insuring L&S-NV's operations and that CCIC relied on these misrepresentations causing CCIC to incur damages. *Id.* ¶¶ 46-55. CCIC also alleges Swarts and Leavitt were negligent. *Id.* ¶¶ 57-65. In the alternative, CCIC alleges that Swarts breached fiduciary duties owed to CCIC and that Swarts' acts and omissions "constitute oppression, fraud, and malice." *Id.* ¶¶ 67-71, 87. CCIC names Santoro as a co-conspirator in this fraud, though not naming him as a defendant to the action, and asserts that "co-conspirators' wrongful and illegal actions entitle [CCIC] to recover general and special damages, including without limitation costs of investigating and defending the Silva claims, and all costs and expenses incurred defending the coverage case in California." *Id.* ¶¶ 74, 89. CCIC next alleges that Leavitt breached its duty of good faith under their agency agreement. (Compl. (# 1) ¶¶ 92-100.)

On June 22, 2006, Leavitt filed a cross-claim against Swarts and a third-party complaint against L&S-NV seeking indemnity, contribution, and apportionment from Swarts and L&S-NV, and alleging negligence, fraudulent misrepresentation, and breach of good faith and fair dealing against L&S-NV. (Answer, Cross-claim, and Third-Party Compl. (# 14) at 15-23.) Swarts answered and filed a cross-claim against Leavitt and a third-party claim against L&S-NV seeking similar relief. (Answer to Cross-claim, Cross-claim, and Third-Party Compl. (# 21) at 4-6.) L&S-NV answered both third-party complaints and counterclaimed against Swarts and Leavitt (## 31, 32). L&S-NV also filed its own third-party complaint against CCIC (# 33) asserting the same

4

causes of action and damages as contained in L&S-NV's complaint in the state suit. The present motion was filed on November 8, 2006.

## II.  Swarts' Motion to Dismiss or Stay

Swarts, relying on *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), asks this court to dismiss or, in the alternative, to stay this proceeding pending the resolution of the Nevada state court action. Plaintiff opposes the motion arguing that this case does not present the exceptional circumstances that warrant a stay or dismissal.

The Supreme Court has determined that under exceptional circumstances, a federal district court may decline to exercise or postpone the exercise of its jurisdiction when there are concurrent state and federal suits and when doing so would promote wise and sound judicial administration, including the conservation of judicial resources and the avoidance of piecemeal litigation. *Colorado River,* 424 U.S. at 817.[2] This type of abstention from the exercise of federal jurisdiction for reasons of judicial economy should be "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813; *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).

For this court to abstain, there must be a parallel or substantially similar proceeding in state court. *Security Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997) ("[I]nherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain."); *Nakash*, 882 F.2d at 1416 (acknowledging that exact parallelism between the cases is not required, "it is enough if the two

---

[2] Although this doctrine is often referred to as an "abstention doctrine," the Supreme Court has rejected this categorization. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14-15 (1983); *Colorado River*, 424 U.S. at 817; Nakash v. Marciano, 882 F.2d 1411, 1415 n. 5 (9th Cir.1989) (amended Aug. 23, 1989) ("the Supreme Court has flatly rejected this [abstention] categorization"); *see also* 17A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4247 at 150-51 (2d ed. 1988). Unlike abstention, which rests on "regard for federal-state relations" and "considerations of proper constitutional adjudication," *Colorado River* abstention rests on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817; *see also Moses Cone*, 460 U.S. at 14-15. This court acknowledges this important distinction, and uses the terms "abstention" or "Colorado River abstention" merely for the sake of economy and clarity.

proceedings are substantially similar.")³   "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America*, 946 F.2d 1072 (4th Cir. 1991).

The Supreme Court and the Ninth Circuit have identified and explained how to apply a nonexclusive list of relevant criteria for determining whether exceptional circumstances exist to justify invoking *Colorado River*. *See Moses Cone*, 460 U.S. at 15-16; *Nakash*, 882 F.2d at 1415-16; *American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir.1988).

In *Colorado River,* the Court examined four factors to determine whether staying proceedings was appropriate: (1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. *Colorado River,* 424 U.S. at 818.  In *Moses Cone*, the Court articulated two more considerations: (5) whether state or federal law controls and (6) whether the state proceeding is adequate to protect the parties' rights. *Moses Cone*, 460 U.S. at 25-26. "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.' " *American Int'l Underwriters*, 843 F.2d at 1257 (quoting *Moses Cone*, 460 U.S. at 16). "For example, in considering the order in which jurisdiction was obtained, it is important not only to determine whether the state or the federal complaint was filed first, but also to assess how much progress has been made in the two actions."

---

³ *See also, e.g., In re S.G. Phillips Constrs., Inc.*, 45 F.3d 702, 708 (2d Cir.1995) (including as a requirement for mandatory abstention the presence of a previously commenced state action); *In re Tucson Estates*, 912 F.2d 1162, 1167 (9th Cir.1990) (recognizing as a factor for permissive abstention the presence of a related proceeding commenced in state court or other nonbankruptcy court). As the Ninth Circuit has noted:

> To require a pendent state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b), which provides district courts with the authority to remand civil actions properly removed to federal court, in situations where there is no parallel proceeding. Section 1334(c) abstention should be read *in pari materia* with section 1452(b) remand, so that the former applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2).

*Security Farms,* 124 F.3d at 1010.

*American Int'l Underwriters*, 843 F.2d at 1257.  Moreover, as part of this flexible approach, it may be important to consider additional factors not spelled out in the *Colorado River* opinion.  *See Moses Cone*, 460 U.S. at 26.

**IV.     Discussion**

**A.     Similarity of the Cases**

In the present case, the record indicates that the two actions are substantially similar, if not identical.  The parties litigating in state and federal court are the same.  In the state suit, all four parties were brought into the suit from the initial complaint.  In the present action, CCIC brought suit against Swarts and Leavitt, while naming L&S-NV as a "co-conspirator" but not as a defendant.  L&S-NV was brought into this case within weeks by Leavitt's third-party complaint, and L&S-NV subsequently counterclaimed against all other parties.

As for the issues, all of the parties' claims, cross-claims, and counterclaims arise out of the conduct of the respective parties with regard to the workman's compensation insurance policy issued by CCIC to L&S-NV and brokered by Leavitt and Swarts.  The parties acknowledge that the allegations and damage claims put forth in L&S-NV's state court complaint are identical to the third-party complaint in this case. (Pl. Opp. to Mot. to Dismiss or in the Alternative to Stay (# 54) at 4; Mot. to Dismiss or in the Alternative to Stay (# 52) at 2.)  And, although the court is not aware of CCIC making any explicit counterclaims against L&S-NV in the state suit, CCIC raised the same issues, called into question the same conduct, and requested the same relief in the state action as it does in the present one.  *See* (Mot. to Dismiss or in the Alternative to Stay (# 52), Answer, Ex. G, at 19, 21.)  For example, CCIC claimed in its answer to the state court action that:

> Leavitt, Swarts, Santoro and others in combination provided false information, misleading information and concealed facts which were material to the risk for which [CCIC] were preparing a quote. . . .  Swarts produced false, erroneous or misleading responses and in some instances deliberately and knowingly concealed from [CCIC] information provided to them regarding [L&S-NV]. . . . This wrongful conduct on the part of Santoro and [Leavitt and Swarts] renders those persons solely liable to [L&S-NV] for all claims and damages asserted in this complaint.

(Mot. to Dismiss or in the Alternative to Stay (# 52), Answer, Ex. G at 19.)  These allegations are

almost identical to those raised in the present action. *See* (Compl. (# 1) ¶¶ 12, 14-16, 26.) CCIC also seeks the same damages for losses sustained in defending the Silva action. In the present case, CCIC prays for: (1) damages caused by the need to defend litigation by Silva and Santoro; (2) damages that were proximately caused by defendants; (3) damages that were foreseeable consequences of the defendants' conduct; (4) damages for the alleged conspiracy, (5) individual damages for fraud; and (5) punitive damages, and related interest, attorney's fees, and costs. (Compl. (# 1) at 26-27.) In the state suit, CCIC prays for "all sums incurred in defending the Silva claims for coverage in California, and for attorney's fees incurred and costs and expenses incurred, in defending this complaint" as well as "actual losses sustained in defending the Silva action including interest, which exceed $10,000, and which Commercial Casualty reasonably paid to California and Nevada law firms to secure coverage decisions before the [Board]. . . ." (Mot. to Dismiss or in the Alternative to Stay (# 52), Answer, Ex. G at 21.) The court finds that the facts and issues raised in this action are substantially similar to those raised in the state suit.

Nevertheless, CCIC argues repeatedly that the California arbitrators' ruling should dispense with L&S-NV's claims against CCIC for reasons of full faith and credit or *res judicata*. Accordingly, CCIC suggests that L&S-NV's claims should be dismissed and that the cases are not substantially similar. The issue of *res judicata* is not essential to the courts ruling here, and the court withholds judgment on CCIC's Motion to Dismiss Third-Party Plaintiff (# 45) at this time. However, with regard to CCIC's contention, it is worth noting that on first impression, the court regards the findings of the arbitrator as very well reasoned, thoroughly researched, and cogently presented. Hence, the court may hold that the arbitrator's findings of fact, which are limited to issues of workman's compensation coverage for Silva's injuries in a dispute between Silva, L&S-NV, and CCIC, are entitled to *res judicata* treatment, as pertains to the same issues and same parties to that dispute.

As it stands, the parties, legal issues, and facts in dispute in the federal and state cases are

substantially similar. Hence, the state suit should provide an adequate vehicle for the prompt and complete resolution of all the parties' claims. *See Moses Cone*, 460 U.S. at 28.

**B.     Colorado River Factors**

The court has carefully examined the *Colorado River* factors in relation to the circumstances of this case. A majority of relevant factors demonstrate that exceptional circumstances exist to support a stay or dismissal for the sake of wise judicial administration.

**(1) Jurisdiction over a *res***

This first factor of the *Colorado River* analysis is not relevant to the present case because there is no property in dispute that is the sort of tangible physical property referred to in *Colorado River*. *See American Int'l Underwriters*, 843 F.2d at 1258.

**(2) Relative convenience of the forums**

This second factor, relative convenience of the forums, is largely irrelevant because both forums are located in Nevada and should be equally convenient. However, as both parties have asserted, substantially all the events that gave rise to this dispute occurred in Nevada. The insurance policy was issued in Nevada to a Nevada business and brokered by Nevada insurance brokers. The alleged actionable conduct largely took place in Nevada and the convenience of witnesses favors a Nevada forum. Further, CCIC is a duly licensed and authorized to do business in Nevada and actively conducts business in Clark County, Nevada. Hence, there is no question that the state court in Clark County is a reasonable and convenient forum in which to try this dispute.

**(3) Desirability of avoiding piecemeal litigation**

Permitting this suit to continue would undeniably result in piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters*, 843 F.2d at 1258. The state court has already decided some substantive issues in this dispute, such as those raised in Leavitt's

9

motion to dismiss.  (Mot. to Dismiss or in the Alternative to Stay (# 52) at 13; Reply Re: Mot. to Dismiss or in the Alternative to Stay (#56) at 5.)  Hence, it is reasonable to believe that the state court is more familiar with the many aspects of this dispute than this court.  If this court were to exercise jurisdiction, it would have to decide these matters anew, requiring duplicative effort and creating a significant possibility of inconsistent results.  *See Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*, 554 F.Supp. 277, 281 (C.D. Cal. 1983) (district court abstains because "[e]xercising federal jurisdiction in this case would not only require duplication of time and effort on the part of the litigants and the Court, but would also create the possibility of inconsistent results"); *American Int'l Underwriters*, 843 F.2d at 1254.

This case is a rather complex multi-party dispute with numerous claims, counterclaims, cross-claims among all parties and numerous legal issues that will require significant judicial resources to resolve.  In addition, numerous substantive motions have already been filed.  Hence, this court regards this dispute as precisely the type of exceptional case where, in the interests of judicial economy, a federal district court may decline to exercise or postpone the exercise of its jurisdiction. This court is not inclined to duplicate the already considerable efforts of the state court.

**(4) Order in which the forums obtained jurisdiction**

As noted, the state suit was filed before the present action.  Nevertheless, this factor must be applied in a pragmatic and flexible manner so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions.  *Moses Cone*, 460 U.S. at 21.  Unfortunately, the present motion was filed nine months ago, and this court is unaware of the current status of the state suit.  However, the parties' pleadings indicate that substantial progress had been made in the state suit nine months ago – the state court judge having already decided motions and the parties having engaged in considerable discovery.  (Reply Re: Mot. to Dismiss or in the Alternative to Stay (#56) at 6.)

Hence, the state court proceeding had progressed further than this one, and it is reasonable to believe that discovery has progressed accordingly and that more progress has been made. Though discovery has progressed somewhat in this proceeding, as is to be expected, this court has not considered the substantive issues to the extent already considered by the state court. Hence, this factor weighs substantially in favor of abstention for purposes of judicial economy.

**(5) Whether state or federal law controls**

All claims in this case are brought pursuant to state law. The state court is in a better position to resolve issues involving Nevada law and this court's federal law expertise is not needed to resolve this dispute. Hence, it would be a misuse of judicial resources to occupy this courts time in a duplicative proceeding when it is clear that the state court is well-prepared to proceed. This factor weighs heavily in favor of abstention for purposes of judicial economy.

**(6) Whether the state proceeding is adequate to protect the parties' rights**

CCIC has provided no evidence and made no plausible argument that suggests the state court proceeding would be inadequate to protect its rights. Further, this court finds unavailing CCIC's argument that the question of how to construe the findings of the California arbitrator for purposes of *res judicata* or full faith and credit would be "more easily and reliably" decided by this court than by the Nevada District Court in Clark County. (Pl. Opp. to Mot. to Dismiss or in the Alternative to Stay (# 54) at 13.) This question is basic and fundamental, and the Nevada court is doubtlessly as willing, able, and prepared to answer it as this court. CCIC also argues that the jury pool for the federal court is drawn from counties other than Clark County. *Id.* Therefore, according to CCIC, a federal court jury would be more desirable in alleviating the "possibility of prejudice in favor of powerful or important in-state interests." *Id.* This court does not believe that a jury pool drawn from within Clark County, Nevada would be any more or less biased than would be a jury drawn from multiple Nevada counties (that is, if it would be biased at all). The state proceeding is more than adequate to protect CCIC's rights. This factor also favors abstention.

11

**(7) Other relevant factors**

The prevention of forum-shopping promotes wise judicial administration and it is appropriate to consider whether this action is an attempt to forum-shop given the flexible and pragmatic way in which abstention is to be applied. *Moses Cone*, 460 U.S. at 21. CCIC could have filed its counterclaims against all parties in the state suit instead of filing a separate action in federal court. CCIC asserts that one of the reasons it chose to file its counterclaims in federal court rather than state court was the fact that the ability of the Nevada court "to take judicial notice is statutory and more circumscribed than the federal rule." (Pl. Opp. to Mot. to Dismiss or in the Alternative to Stay (# 54) at 13.) Though this is not the most egregious case of forum-shopping, it is worth noting that the Ninth Circuit has determined that such "rule-of-evidence shopping. . . epitomizes forum shopping." *American Int'l Underwriters*, 843 F.2d at 1259 (involving a plaintiff who abandoned a state court case because the Federal Rules of Evidence were more favorable than the state evidentiary rules).

For the foregoing reasons, the court finds that this case presents the type of exceptional circumstances that make abstention for the sake of wise judicial administration an appropriate course of action.

**C.   Stay or Dismissal**

In a case where a district court invokes *Colorado River*, it generally makes little difference to the state proceeding whether the federal action is stayed or dismissed. *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989). Staying this case should be equivalent to dismissal because the court has concluded that parallel state court litigation will be an "adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses Cone*, 460 U.S. at 28. Thus, the court's decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case. *Id.*

However, the Supreme Court indicated that invocation of *Colorado River* is contingent on

keeping the federal forum open if necessary. *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 570 n.21 (1983) ("[R]esort to the federal forum should remain available if warranted."); *Attwood*, 886 F.2d at 243. Accordingly, this court has determined that a stay is the appropriate course of action in this case. "[This] conclusion is supported by the considerations of 'wise judicial administration' which underlie the *Colorado River* doctrine." *Attwood*, 886 F.2d at 244 (quoting *Colorado River*, 424 U.S. at 817). Indeed, the choice of a stay rather than a dismissal will have no practical effect if all the parties' issues are resolved by the state proceeding. But if those issues are not resolved, a stay ensures that the federal court will meet its "unflagging duty" to exercise its jurisdiction in case the state proceedings do not reach the expected resolution. *See Colorado River*, 424 U.S. at 817. A stay will effectively conserve court resources while avoiding premature rejection of the litigants' access to a federal forum and ensure that the federal forum will remain open if "for some unexpected reason the state forum does turn out to be inadequate." *Moses Cone*, 460 U.S at 28; *Attwood*, 886 F.2d at 244.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

IT IS THEREFORE ORDERED that Swarts' Motion to Stay (# 52) is hereby GRANTED.

IT IS FURTHER ORDERED that the parties shall file a Joint Status Report six months from the date of this order, and every six months thereafter.

IT IS FURTHER ORDERED that the Clerk shall administratively close this action. This action is taken solely for the court's administrative purposes and is not intended to have any effect on the parties or upon the stay now in effect in this case.

IT IS SO ORDERED.

DATED this 24th day of July, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE